UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| FRANK BARILE, | Case No.:  3:25-cv-3762-WQH-SBC |
| Plaintiff, | **ORDER** |
| v. | |
| OFFICER MARCOS BOCANEGRA CB5601; OFFICER MORGAN GRIGGS CB5360; and DOES 1–10, inclusive, | |
| Defendants. | |

HAYES, Judge:

The matter before the Court is the Motion to Dismiss (ECF No. 4) filed by Defendants Officer Marcos Bocanegra and Sergeant Morgan Griggs.

## I.   BACKGROUND

On November 20, 2025, Plaintiff Frank Barile ("Plaintiff") initiated this action by filing a Complaint against Defendants Officer Marcos Bocanegra ("Bocanegra"), Sergeant

Morgan Griggs ("Griggs")[1] (together, "Defendants"), and Does 1–10 in the Superior Court for the State of California, County of San Diego. (Compl., ECF No. 1-6.) Plaintiff asserts federal constitutional claims under 42 U.S.C. § 1983 arising from his arrest and prosecution. *Id.* ¶ 34.

On December 24, 2025, Defendants removed the action to this Court. (ECF No. 1.)

On January 15, 2026, Defendants filed the pending Motion to Dismiss. (ECF No. 4.) On February 23, 2026, Plaintiff filed a Response in Opposition to the Motion to Dismiss. (ECF No. 7.) On February 23, 2026, Defendants filed a Reply. (ECF No. 8.)

## II.   ALLEGATIONS IN THE COMPLAINT

This case concerns the circumstances leading to Defendants' arrest of Plaintiff and his subsequent prosecution.

### A. High-Speed Car Chase

Defendants are police officers for the City of Carlsbad. (Compl. ¶¶ 2–3.) On December 1, 2023, at approximately 2:10 AM, Defendant Bocanegra observed a BMW make an illegal U-turn on Palomar Airport Road. *Id.* ¶ 9. The BMW made a second illegal U-turn and "drove right by [Defendant Bocanegra] going eastbound on Palomar Airport Road." *Id.*

Defendant Bocanegra followed the BMW and turned on his emergency lights. *Id.* ¶ 10. "The BMW sped off and turned southbound on El Camino Real." *Id.* Defendant Bocanegra pursued the car "at a high rate of speed exceeding 100 mph." *Id.*

At the start of the pursuit, Defendant Bocanegra "identified the BMW as [s]ilver." *Id.* He "identified the car as a silver BMW [four] times during and just after the chase." *Id.* Defendant Bocanegra "lost sight of the BMW at Olivenhain and asked dispatch [at 2:15 AM] to notify the [California Highway Patrol ("CHP")] to look for a silver BMW with

---

[1] The Complaint identifies this Defendant as "Officer Morgan Griggs." (ECF No. 1-6.) Because the Motion to Dismiss asserts that this Defendant was erroneously named (*see* ECF No. 4-1 at 5), the Court will refer to this Defendant as "Sergeant Morgan Griggs."

tinted windows." *Id.* ¶ 11. At 2:18 AM, Defendant Bocanegra "asked dispatch to check license plate readers at La Costa and El Camino Real." *Id.* At 2:25 AM, Defendant Bocanegra "again stated [that] the car was a silver BMW M3 [s]edan." *Id.* At 2:33 AM, Defendant Bocanegra "asked dispatch to notify [the San Diego Sheriff's Department] and [CHP] that the vehicle ha[d] purple neon headlights." *Id.*

Dispatch notified Defendant Bocanegra that a license plate reader on College at Tamarack had captured a white BMW M3 heading northbound through the intersection at 1:45 AM. *Id.* ¶ 12. The same white BMW was identified heading southbound through the intersection at 2:41 AM. *Id.* Dispatch identified Plaintiff as the owner of the white BMW and gave Defendant Bocanegra his address. *Id.*

The license plate reader registered the white BMW "25 minutes before [Defendant Bocanegra started pursuing a silver BMW," "in an area north of where the chase had started[,] traveling northbound away from where the chase had started." *Id.* ¶ 23. "[A]lmost an hour later," the white BMW again hit the license plate reader "traveling southbound at the same intersection." *Id.*

**B. Plaintiff's Arrest**

Defendants Bocanegra and Griggs went to the "home address" of Plaintiff at approximately 3:00 AM. *Id.* ¶ 13. Defendant Bocanegra "saw a white BMW" and "felt the hood[,] which was hot to the touch." *Id.* Defendant Bocanegra "knocked on the door" and spoke first with Plaintiff's mother, and then with Plaintiff. *Id.*

Defendant Bocanegra arrested Plaintiff at 3:07 AM for "evading" under California Vehicle Code § 2800.2(a) and "reckless driving" under California Vehicle Code § 23103(a). *Id.* "Plaintiff was handcuffed and taken to jail." *Id.* ¶¶ 14, 22. "Plaintiff then had to post bail in the amount of $2,500.00." *Id.* "Attorney fees to defend against the charges totaled $16,871.00," an "exaggerated" amount "due to the Carlsbad Police [Department']s reluctance to provide the tape and transcription of the radio call regarding the chase of the BMW and the subsequent arrest of the wrong person." *Id.* ¶ 21.

3:25-cv-3762-WQH-SBC

Defendants "never obtained a warrant to search the [license plate] readers," to "walk up to [Plaintiff's] front door and knock at 3:00 AM," or to "arrest Plaintiff." *Id.* ¶ 22.

**C. Defendant Bocanegra's Police Report**

Defendant Bocanegra wrote a police report about the incident. *Id.* ¶ 15. In his report, Defendant Bocanegra

> stated [that] at approximately [2:10 AM] he observed a white BMW make an illegal [U-turn] and proceeded to chase the BMW after it failed to yield for his emergency lights. The BMW took a right turn on El Camino Real going southbound at speeds of 130–150 miles per hour. After [four] minutes and 4.3 miles the pursuit was terminated because [Defendant Bocanegra] lost sight of the vehicle at El Camino Real and Olivenhain.

*Id.*

Defendant Bocanegra further stated in the report that he "requested dispatch to check license plate readers to see if they could pick up a license plate." *Id.* ¶ 16. He stated that the dispatchers "advised they found a suspect vehicle matching the same description heading northbound [on] College at the intersection of Tamarack minutes after termination of the pursuit," and that the license plate reported Plaintiff as the registered owner "who had prior arrests for vehicle code violations." *Id.* ¶ 16.

Defendant Bocanegra further stated that dispatch advised "that license plate readers had hit a second time southbound [on] College at Tamarack." *Id.* He stated that after "[o]fficers canvassed the area and were met with negative results," he advised dispatch that he, Defendant Griggs, and another officer "were going to the registered owner[']s address." *Id.* ¶ 17.

Defendant Bocanegra stated "that he observed the same white BMW matching the description parked inside the apartment complex" at the address of the registered owner, "positively identified the BMW as the same BMW he was in pursuit of," and felt that the "engine bay of the vehicle was hot to the touch." *Id.* ¶ 18.

He further stated that he "knocked on the door and [Plaintiff]'s mother" answered. *Id.* ¶ 19. He stated that he "asked her if she owned a white BMW to which she answered [that] her son does." *Id.* Defendant Bocanegra stated that he "observed [Plaintiff] approach

3:25-cv-3762-WQH-SBC

the doorway," asked him if he owned the BMW, and Plaintiff "stated yes and that he was driving the vehicle." *Id.*

Defendant Bocanegra stated that Plaintiff "appeared to be heavily intoxicated and had a strong odor of an alcoholic beverage coming from his person." *Id.* ¶ 20. Defendant Bocanegra stated that "due to the totality of the circumstances[,] he placed [Plaintiff] under arrest." *Id.* ¶ 21.

Defendant Griggs "reviewed and signed off on the police report." *Id.* ¶ 15.

### D. Plaintiff's Criminal Prosecution

During his criminal prosecution in state court, Plaintiff "brought up the fact that the police report stated that[,] within minutes of the chase ending[,] the white BMW showed up on the [license plate] reader over 9 miles away," and that that "was impossible." *Id.* ¶ 26. The prosecutor responded that Defendant Bocanegra stated that, "based on the speed the driver was going[,] it would still be possible." *Id.*

### E. Summary of the Claims

Plaintiff brings three federal constitutional claims against Defendants under 42 U.S.C. § 1983: (1) a Fourth Amendment claim, (2) a due process claim, and (3) a malicious prosecution claim. *Id.* at 8, 10. Plaintiff seeks compensatory and punitive damages and attorneys' fees and costs *Id.* at 10.

## III.   LEGAL STANDARD

Rule 12(b)(6) of the Federal Rules of Civil Procedure ("FRCP") permits dismissal for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). To state a claim for relief, a pleading "must contain . . . a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). Dismissal under FRCP Rule 12(b)(6) "is proper only where there is no cognizable legal theory[,] or an absence of sufficient facts alleged to support a cognizable legal theory." *Shroyer v. New Cingular Wireless Servs., Inc.*, 622 F.3d 1035, 1041 (9th Cir. 2010) (quoting *Navarro v. Block*, 250 F.3d 729, 732 (9th Cir. 2001)).

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* However, "a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555 (alteration in original) (quoting Fed. R. Civ. P. 8(a)). While a pleading "does not require 'detailed factual allegations,'" FRCP Rule 8 nevertheless "demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 555). A court is not "required to accept as true allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences." *Sprewell v. Golden State Warriors*, 266 F.3d 979, 988 (9th Cir. 2001). "In sum, for a complaint to survive a motion to dismiss, the non-conclusory factual content, and reasonable inferences from that content, must be plausibly suggestive of a claim entitling the plaintiff to relief." *Moss v. U.S. Secret Serv.*, 572 F.3d 962, 969 (9th Cir. 2009) (quotations omitted).

## IV.    DISCUSSION

### A. Defendant Bocanegra

#### 1. *Fourth Amendment*

Defendant Bocanegra contends that qualified immunity shields him from Plaintiff's Fourth Amendment claim. (ECF No. 4-1 at 9–13.) Plaintiff contends that Defendant Bocanegra is not entitled to qualified immunity because he arrested Plaintiff "in the curtilage of his home" without a warrant, exigent circumstances, or probable cause. (ECF No. 7 at 10.)

i.    Legal Standard

Qualified immunity shields government officials performing discretionary functions "from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982) (citations omitted). "To determine whether qualified immunity applies, we ask whether (1) the plaintiff has plausibly alleged a violation of a constitutional right, and (2) the constitutional right was 'clearly established' at the time of the conduct at issue." *Sampson v. Cnty. of Los Angeles ex rel. Los Angeles Cnty. Dep't of Children & Fam. Servs.*, 974 F.3d 1012, 1018 (9th Cir. 2020) (citing *Wilk v. Neven*, 956 F.3d 1143, 1148 (9th Cir. 2020)). District courts "have discretion to address [these] questions in reverse order." *Id.* (citing *Pearson v. Callahan*, 555 U.S. 223, 236, 242 (2009)). Courts must determine "'whether the violative nature of *particular* conduct is clearly established' . . . with reference to the facts of specific cases." *Isayeva v. Sacramento Sheriff's Dep't*, 872 F.3d 938, 947 (9th Cir. 2017) (quoting *Mullenix v. Luna*, 577 U.S. 7, 11–12 (2015)).

The Fourth Amendment protects "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures." U.S. Const. amend. IV. The applicable Fourth Amendment reasonableness standard depends on where the search or seizure occurs.

"[S]earches and seizures inside a home without a warrant are presumptively unreasonable." *Payton v. New York*, 445 U.S. 573, 586 (1980) (quotations and citation omitted). "[P]olice officers may not execute a warrantless arrest in a home unless they have both probable cause and exigent circumstances" or another exception to the warrant requirement. *Hopkins v. Bonvicino*, 573 F.3d 752, 773 (9th Cir. 2009) (citations omitted). The protection against warrantless searches and seizures extends to a home's curtilage. *United States v. Struckman*, 603 F.3d 731, 739 (9th Cir. 2010) (citing *United States v. Dunn*, 480 U.S. 294, 301 (1987)). The curtilage is an area "so intimately connected to the home that it should fall under the umbrella of the Fourth Amendment's protections."

3:25-cv-3762-WQH-SBC

*United States v. Perea-Rey*, 680 F.3d 1179, 1184 (9th Cir. 2012) (quoting *United States v. Johnson*, 256 F.3d 895, 911 (9th Cir. 2001) (Kozinski, J., concurring)).

By contrast, warrantless arrests that occur outside the home require only probable cause to be reasonable under the Fourth Amendment. *Devenpeck v. Alford*, 543 U.S. 146, 152 (2004) (citations omitted). "Probable cause to arrest exists when there is a 'fair probability or substantial chance of criminal activity' by the arrestee based on the totality of the circumstances known to the officers at the time of arrest." *Vanegas v. City of Pasadena*, 46 F.4th 1159, 1164 (9th Cir. 2022) (citing *Lacey v. Maricopa Cnty.*, 693 F.3d 896, 918 (9th Cir. 2012) (en banc)). Probable cause "'is not a high bar.'" *Id.* (quoting *Kaley v. United States*, 571 U.S. 320, 338 (2014)).

ii.    Location of Arrest

To determine which Fourth Amendment standard applies, the Court must address where the alleged arrest occurred.

Plaintiff contends that Defendant Bocanegra arrested him in his home or the curtilage of his home. (ECF No. 7 at 10.) Plaintiff contends that the exigent circumstances and "knock and talk" exceptions to the Fourth Amendment's warrant requirement for home arrests do not apply. *Id.* at 10–12. In response, Defendant Bocanegra contends that he needed only probable cause to arrest Plaintiff because the arrest occurred in the "area outside the door of an apartment." (ECF No. 8 at 3–4.)

Plaintiff alleges that Defendants "proceeded to [his] home address," "knocked on the door and spoke with [his] mother," spoke to Plaintiff, and "then arrested [Plaintiff]." (Compl. ¶ 13.) Plaintiff further alleges that Defendant Bocanegra stated in his police report that he "observed the same white BMW . . . parked inside the apartment complex," "knocked on the door and [Plaintiff's] mother opened the door," "observed [Plaintiff] approach the doorway and asked if he owned the BMW," and "placed [Plaintiff] under arrest and placed him in handcuffs." *Id.* ¶¶ 18–20. In his opposition brief, Plaintiff refers

3:25-cv-3762-WQH-SBC

to his "apartment complex." (ECF No. 7 at 14.)[2] Drawing "all reasonable inferences in favor" of Plaintiff, the Court assumes for the purpose of deciding this motion that the alleged arrest occurred at the doorway of Plaintiff's apartment. *Moreno v. UtiliQuest, LLC*, 29 F.4th 567, 573 (9th Cir. 2022) (citation omitted).

The Fourth Amendment's warrant requirement does not apply to the doorway or threshold of a residence because it is a public place. *United States v. Quaempts*, 411 F.3d 1046, 1048 (9th Cir. 2005) (citing *United States v. Santana*, 427 U.S. 38, 42 (1976)). In *United States v. Vaneaton*, the Ninth Circuit established the "doorway exception" to the warrant requirement for home arrests. 49 F.3d 1423 (9th Cir. 1995). In that case, officers knocked on the door of the plaintiff's motel room, the plaintiff saw the officers, and he opened the door. *Id.* at 1425. The officers asked the plaintiff questions and then arrested him while he stood "at the doorway but just inside the threshold." *Id.* The officers stood "immediately outside the threshold of the room and did not enter before advising [the plaintiff] he was under arrest." *Id.* The Ninth Circuit held that the warrantless arrest did not violate the Fourth Amendment because the plaintiff "voluntarily exposed himself to warrantless arrest by freely opening the door of his motel room" in response to a "noncoercive knock by the police." *Id.* at 1426 (citing *United States v. Johnson*, 626 F.2d 754, 757 (9th Cir. 1980)).[3]

---

[2] Although the word "apartment" does not appear in the Complaint, the Court assumes for the purpose of deciding this motion that Plaintiff lived in an apartment complex at the time of his arrest. *See Hicks v. PGA Tour, Inc.*, 897 F.3d 1117–18 (9th Cir. 2018) (approving district court's consideration of "concession" made in plaintiffs' briefing that was "entirely consistent with the allegations" in their complaint).

[3] In *United States v. Lundin*, the Ninth Circuit noted that *Vaneaton* "may be on infirm ground" after the Supreme Court's decision in *Florida v. Jardines*, 569 U.S. 1 (2013). 817 F.3d 1151, 1160 (9th Cir. 2016). However, the *Lundin* court found "no need to overrule *Vaneaton*" because *Vaneaton* concerned officers "standing in the common space of a motel when they knocked, rather than in the curtilage of a home." *Id.* The Ninth Circuit later applied *Vaneaton*'s doorway exception in a memorandum disposition affirming the constitutionality of an arrest where officers stood outside an apartment and arrested the appellant when he "stepped into his doorway." *Reyes v. City of Santa Ana*, 832 Fed. App'x 487, 489–90 (9th Cir. 2020). The *Reyes* court further stated that *Vaneaton* "remains good law." *Id.* at 490.

9

*Vaneaton*'s doorway exception does not apply when officers cross the threshold and enter an arrestee's home. In *LaLonde v. County of Riverside*, the plaintiff's roommate opened the door of his apartment to speak to an officer. 204 F.3d 947, 951 (9th Cir. 2000). The plaintiff "walked into view" but stood inside the apartment by "a few feet" and "did not at any time reach the doorway." *Id.* at 951, 955. The officer asked the plaintiff to step outside the apartment but the plaintiff repeatedly refused. *Id.* at 951. After the conversation escalated, the officer "tried to reach in and grab [the plaintiff] by the shirt," crossed the threshold and entered the plaintiff's apartment, "advanced on" the plaintiff, grabbed him, knocked him down, and pepper sprayed him. *Id.* at 951–52. The Ninth Circuit held that *Vaneaton*'s doorway exception did not apply because "[t]he arrest took place only after the officers had crossed the threshold of the door and entered [the plaintiff's] apartment." *Id.* at 955.

Here, Plaintiff alleges that he was arrested after his mother opened the door and he approached the threshold of the apartment to speak with Defendant Bocanegra. The allegations in this case more closely resemble those in *Vaneaton* than in *LaLonde*. Plaintiff's cited cases are distinguishable because they concern warrantless searches and seizures occurring in the curtilage of arrestees' houses. *See United States v. Perea-Rey*, 680 F.3d 1179 (9th Cir. 2012) (agents searched carport of house); *United States v. Struckman*, 603 F.3d 731 (9th Cir. 2010) (officers entered backyard of house); *Lundin*, 817 F.3d 1151 (officers knocked on door while standing on front porch of house). By contrast, Plaintiff's Complaint reflects that Plaintiff was arrested in the doorway of his apartment, which does not violate the Fourth Amendment under *Vaneaton*. *See also Jasmin v. Santa Monica Police Dep't*, 828 Fed. App'x 347, 349 (9th Cir. 2020) (citations omitted) (holding that plaintiff lacked reasonable expectation of privacy under the Fourth Amendment "in the common area of her apartment complex"); *United States v. Nohara*, 3 F.3d 1239, 1241–42 (9th Cir. 1993) (same). Plaintiff has not identified—nor has the Court found—a "case where an officer acting under similar circumstances" as those Defendant Bocanegra allegedly faced "was held to have violated the Fourth Amendment." *White v. Pauly*, 580

3:25-cv-3762-WQH-SBC

U.S. 73, 79 (2017). As pled, Plaintiff's warrantless arrest did not violate clearly established law if probable cause existed. *See Malek v. Green*, No. 17-cv-00263-BLF, 2017 WL 4284117, at *11–15 (N.D. Cal. Sept. 27, 2017) (granting qualified immunity to officers where plaintiff alleged that they knocked on his door without a warrant, he talked with them and "closed the door slightly," and officers arrested him).

### iii. Probable Cause for Reckless Driving

The Court assesses whether Defendant Bocanegra had probable cause to arrest Plaintiff for reckless driving.

In the Fourth Amendment context, "qualified immunity applies when it was objectively reasonable for an officer to believe he or she had probable cause to make the arrest." *Hill v. City of Fountain Valley*, 70 F.4th 507, 516 (9th Cir. 2023) (citing *Rosenbaum v. Washoe Cnty.*, 663 F.3d 1071, 1076 (9th Cir. 2011)). Put another way, "the question in determining whether qualified immunity applies is whether all reasonable officers would agree that there was no probable cause in this instance." *Id.* (quoting *Rosenbaum*, 663 F.3d at 1078). "To determine whether an officer had probable cause for an arrest, we examine the events leading up to the arrest, and then decide whether these historical facts, viewed from the standpoint of an objectively reasonable police officer, amount to probable cause." *Dist. of Columbia v. Wesby*, 583 U.S. 48, 56–57 (2018) (quotations and citations omitted).

Here, the dispatch tape attached to the Complaint demonstrates that Defendant Bocanegra told dispatch he observed a "sil[ver] BMW M3 sedan" with "purple neon headlights" speeding in excess of 100 miles per hour.[4] (ECF No. 1-2 at 3.) Dispatch told Defendant Bocanegra that two BMWs hit Carlsbad license plate readers in the relevant time period—a white M3 sedan and a blue convertible—and provided Plaintiff's address

---

[4] The Court considers both the dispatch transcript (ECF No. 1-2) and Defendant Bocanegra's police report (ECF No. 1-3) when ruling on the pending motion because both were attached as exhibits to Plaintiff's Complaint. *See Durning v. First Boston Corp.*, 815 F.2d 1265, 1267 (9th Cir. 1987) (citing *Amfac Mortg. Corp. v. Ariz. Mall of Tempe, Inc.*, 583 F.2d 426, 429–30 (9th Cir. 1978)) ("If a complaint is accompanied by attached documents, . . . [those] documents are part of the complaint and may be considered in determining whether the plaintiff can prove any set of facts in support of the claim.").

3:25-cv-3762-WQH-SBC

and prior driving-related arrests in connection with the white M3 sedan. *See id.* at 3–4. After proceeding to Plaintiff's address, Plaintiff alleges that Defendant Bocanegra "saw a white BMW" parked there and felt that the car's hood was "hot to the touch." (Compl. ¶ 13.) In his police report, Defendant Bocanegra stated that Plaintiff "appeared to be heavily intoxicated," said the white BMW belonged to him, and admitted to driving it recently. (ECF No. 1-3 at 5.) Defendant Bocanegra initially perceived the suspect vehicle briefly and in the dark, while both vehicles traveled at high rates of speed. A reasonable officer could have concluded that his initial perception of the vehicle's color as silver was incorrect, and that the vehicle was actually white. Further, a reasonable officer in Defendant Bocanegra's position could have believed that a vehicle traveling over 100 miles per hour could move across the Carlsbad area quickly enough to show up on license plate readers several miles north of the pursuit. Based on the totality of the circumstances, the Court concludes that it was "objectively reasonable for [Defendant Bocanegra] to believe he [] had probable cause to make the arrest." *Hill*, 70 F.4th at 516.

Even if the alleged discrepancies regarding the vehicle's color and location created doubt as to whether Plaintiff was the driver of the suspect vehicle, such doubt would not rise to the level of a violation of clearly established law. "The plaintiff bears the burden of proof that the right allegedly violated was clearly established at the time of the alleged misconduct." *Romero v. Kitsap Cnty.*, 931 F.2d 624, 627 (9th Cir. 1991) (citing *Baker v. Racansky*, 887 F.2d 183, 186 (9th Cir. 1989)). "[T]he clearly established law must be particularized to the facts of the case." *Shooter v. Arizona*, 4 F.4th 955, 962 (9th Cir. 2021) (quotations and citation omitted). "Although there need not be a case directly on point, 'existing precedent must have placed the statutory or constitutional question beyond debate.'" *Id.* at 961 (quoting *Ashcroft v. al-Kidd*, 563 U.S. 731, 741 (2011)). Plaintiff has not identified cases, nor has the Court found any, with comparable facts in which courts found that officers lacked probable cause to make an arrest. At a minimum, "reasonable officers could disagree as to the legality of the arrest such that the arresting officer is

12

3:25-cv-3762-WQH-SBC

entitled to qualified immunity" on the Fourth Amendment claim. *Rosenbaum*, 663 F.3d at 1076 (citation omitted).

Accordingly, the Court finds that Defendant Bocanegra is entitled to qualified immunity on Plaintiff's Fourth Amendment unlawful arrest claim.

### 2. Due Process

The Complaint does not specify whether Plaintiff intends to assert a claim under the substantive or procedural component of the Due Process Clause. In his Opposition brief, Plaintiff refers to "substantive due process." (ECF No. 7 at 17, 19.) Accordingly, the Court assesses whether Plaintiff has stated a substantive due process claim.

### i. Legal Standard

"The Fourteenth Amendment prohibits any state deprivation of life, liberty, or property without due process of law." *Ingraham v. Wright*, 430 U.S. 651, 672 (1977). The Due Process Clause has both substantive and procedural components. *United States v. Quintero*, 995 F.3d 1044, 1051 (9th Cir. 2021). "The Supreme Court has applied two different legal standards to substantive due process claims": (1) the "fundamental rights" standard and (2) the "shocks the conscience" standard. *Regino v. Staley*, 133 F.4th 951, 960 n.5 (9th Cir. 2025) (citations omitted). Plaintiff's due process arguments rely only on a "shocks the conscience" theory, not the "fundamental rights" standard. (*See* ECF No. 7 at 17–18.) Accordingly, the Court applies the "shocks the conscience" standard to Plaintiff's due process claim. "The level of culpability required to meet the conscience-shocking standard depends on the context." *Tennison v. City & Cnty. of San Francisco*, 570 F.3d 1078, 1089 (9th Cir. 2009) (citing *Cnty. of Sacramento v. Lewis*, 523 U.S. 833, 846 (1998)). In the context of police officers "withholding evidence from prosecutors," a "§ 1983 plaintiff must show that [the] officers acted with deliberate indifference to or reckless disregard for an accused's rights or for the truth." *Id.*

### ii. Discussion

Plaintiff contends that his arrest violated the Constitution. "[T]he validity of an arrest must be analyzed under Fourth Amendment standards, not due process standards." *Picray*

*v. Sealock*, 138 F.3d 767, 770 (9th Cir. 1998) (citations omitted); *see also Albright v. Oliver*, 510 U.S. 266, 271 (1994). As discussed, the Court finds that Plaintiff fails to state a Fourth Amendment claim against Defendant Bocanegra. The Court dismisses Plaintiff's due process claim to the extent it relies on Plaintiff's contention that Defendant Bocanegra illegally arrested him. *See Abdul-Hafeez v. City of San Diego*, No. 24-cv-1184-RSH-DDL, 2025 WL 696993, at *4 (S.D. Cal. Mar. 4, 2025) (dismissing substantive due process claim based on plaintiff's search and arrest as duplicative of plaintiff's Fourth Amendment claims).

Plaintiff further contends that Defendant Bocanegra violated his due process rights because, after arresting Plaintiff, Defendant Bocanegra "wrote a [police] report that had numerous false statements and material omissions." (ECF No. 7 at 17.) Specifically, Plaintiff contends that Defendant Bocanegra omitted from his report: (1) that he previously told dispatch the BMW was silver with purple neon headlights, not white and (2) that the license plate reader "could not find a matching description [of the car] 15 minutes after the pursuit ended." *Id.* at 18. Plaintiff further contends that Defendant Bocanegra made the following "false statements" in his report: (1) that the suspect vehicle hit the license plate reader "in the area of the pursuit," instead of "5 miles north of the pursuit"; (2) that he positively identified the white BMW as the same one from the car chase; (3) that Plaintiff had a prior arrest for reckless driving, instead of merely speeding; and (4) that dispatch told Defendant Bocanegra "minutes after the termination of the pursuit" that the white BMW hit the license plate reader. *Id.* In response, Defendant Bocanegra contends that Plaintiff "has not identified any materially false statements" in the police report. (ECF No. 4-1 at 14–15.)

"The Fourteenth Amendment prohibits the deliberate fabrication of evidence by a state official." *Spencer v. Peters*, 857 F.3d 789, 793 (9th Cir. 2017) (citing *Devereaux v. Abbey*, 263 F.3d 1070, 1074–75 (9th Cir. 2001) (en banc)). "To prevail on a § 1983 claim of deliberate fabrication, a plaintiff must prove that (1) the defendant official deliberately fabricated evidence and (2) the deliberate fabrication caused the plaintiff's deprivation of

liberty." *Id.* at 798 (citing *Costanich v. Dep't of Soc. & Health Servs.*, 627 F.3d 1101, 1111 (9th Cir. 2010)). "Deliberate fabrication" requires "something more than a mere omission," "minor discrepancy," or technical inaccuracy. *O'Doan v. Sanford*, 991 F.3d 1027, 1045 (9th Cir. 2021). "Mere carelessness" or "[e]rrors concerning trivial matters" are inadequate to state a deliberate fabrication claim because they do not establish that the inaccuracies in a police report caused the plaintiff's injury. *Spencer*, 857 F.3d at 798 (quotations and citations omitted).

A plaintiff may prove deliberate fabrication with circumstantial or direct evidence. *Costanich*, 627 F.3d at 1111. To prove a deliberate fabrication claim with circumstantial evidence, a plaintiff must show that either: "(1) [d]efendants continued their investigation of [the plaintiff] despite the fact that they knew or should have known that he was innocent; or (2) [d]efendants used investigative techniques that were so coercive and abusive that they knew or should have known that those techniques would yield false information." *Devereaux*, 263 F.3d at 1076. Examples of direct evidence of deliberate fabrication include "deliberately mischaracteriz[ing] witness statements in [an] investigative report" or falsely reporting that one has interviewed witnesses when one has not done so. *Costanich*, 627 F.3d at 1111.

Plaintiff pleads insufficient facts to establish that any potential inaccuracies in Defendant Bocanegra's police report rose to the level of deliberate fabrication or caused Plaintiff's injury. Some of the statements Plaintiff identifies as false are consistent with the information contained in the pleadings. For instance, Defendant Bocanegra's general statement that dispatch located Plaintiff's car through license plate readers "in the area of the pursuit," ECF No. 1-3 at 4, is consistent with Plaintiff's allegation that the readers identified Plaintiff's car several miles north of the pursuit. Defendant Bocanegra's statement that he "positively identified the BMW" as the same vehicle from the pursuit is not necessarily false, as it relies on Defendant Bocanegra's subjective, personal knowledge. *See id.* at 5. And Defendant Bocanegra's statement that dispatch "advised they found the suspect vehicle . . . minutes after the termination of the pursuit," *id.*, accords with the

dispatch transcript, which reflects that dispatch identified Plaintiff's white BMW approximately twenty minutes after the pursuit ended, *see* ECF 1-2 at 3.

The other statements identified by Plaintiff do not change the Court's conclusion. As discussed above, the fact that Defendant Bocanegra initially perceived the car as silver instead of white does not make his probable cause determination unreasonable. Defendant Bocanegra's misidentification of Plaintiff's prior speeding arrest as one for reckless driving is too minor to support an inference of deliberate falsehood. Plaintiff fails to sufficiently allege that such inaccuracies actually caused Plaintiff's allegedly wrongful prosecution. *See Gausvik v. Perez*, 345 F.3d 813, 817 (9th Cir. 2003) (affirming summary judgment for defendant officer on deliberate fabrication claim where officer stated in affidavit that eight children had accused plaintiff of abuse, when only two had done so). The Court dismisses Plaintiff's due process claim that relies on the statements made in Defendant Bocanegra's police report.

### 3. *Malicious Prosecution*

Plaintiff bases his third claim for malicious prosecution on Defendant Bocanegra's police report and allegedly false "narration to the [assistant] district attorney." (Compl. ¶ 28.) The police report contains the same allegedly "false statements and material omissions" discussed above. Plaintiff also relies on Defendant Bocanegra's alleged statement to the prosecutor that "based on the speed the driver was going[,] it would still be possible" for the suspect vehicle to hit the license plate reader "over 9 miles away" from the site of the pursuit. *Id.* ¶ 26. Defendant Bocanegra contends that Plaintiff's malicious prosecution claim fails because Plaintiff does not identify "any materially false statements in either Officer Bocanegra's police report or his purported 'narration to the district attorney' that would have overridden the prosecutor's independent decision to pursue the case." (ECF No. 4-1 at 15.)

### i. Legal Standard

"Malicious prosecution, by itself, does not constitute a due process violation." *Freeman v. City of Santa Ana*, 68 F.3d 1180, 1189 (9th Cir. 1995) (citations omitted). To

state a claim for malicious prosecution under § 1983, a plaintiff must establish that (1) the defendants "prosecuted him with malice and without probable cause" and (2) "they did so for the purpose of denying him equal protection *or another specific constitutional right.*" *Awabdy v. City of Adelanto*, 368 F.3d 1062, 1066 (9th Cir. 2004) (quoting *Freeman*, 68 F.3d at 1189) (emphasis added). Malicious prosecution actions can be brought against prosecutors or "other persons who have wrongfully caused the charges to be filed." *Id.* at 1066 (citing *Galbraith v. Cnty. of Santa Clara*, 307 F.3d at 1126–27 (9th Cir. 2002)). When suing individuals other than the prosecutor, a plaintiff can state a malicious prosecution claim by establishing that the defendant officers "improperly exerted pressure on the prosecutor, knowingly provided misinformation to him, concealed exculpatory evidence, or otherwise engaged in wrongful or bad faith conduct that was actively instrumental in causing the initiation of legal proceedings." *Id.* at 1067 (citing *Galbraith*, 307 F.3d at 1126–27).

### ii.    Discussion

Plaintiff alleges a violation of his right "to be free from malicious prosecution due to the presentation of information known to be false in the form of the police report and narration to the district attorney." (Compl. ¶ 28.) Mere "malicious prosecution," by itself, does not violate the Constitution. *Freeman*, 68 F.3d at 1189. Plaintiff does not adequately allege that Defendant Bocanegra acted for the purpose of denying him "another specific constitutional right." *Awabdy*, 368 F.3d at 1066. The Court dismisses Plaintiff's malicious prosecution claim for failure to satisfy one of its essential elements: purpose to deny a specific constitutional right. *See Samuelson v. Jewell Sch. Dist. 8*, 725 F. Supp. 3d 1195, 1220 (D. Or. 2024) (dismissing malicious prosecution claim for failure to allege a purpose to deprive the plaintiff of a specific constitutional right); *Tavakoli v. City of Los Angeles*, No. 2:18-cv-5410-CAS (GJSx), 2019 WL 1297950, at *10 (C.D. Cal. Mar. 18, 2019) (granting summary judgment to defendants on the same grounds).

## B. Defendant Griggs

Defendant Griggs contends that Plaintiff fails to allege that he personally "participated in or directed the constitutional violations allegedly committed by Officer Bocanegra." (ECF No. 8 at 9.) Defendant Griggs further contends that qualified immunity bars the claims against him because "a reasonable supervisor in his position *could have* relied on Officer Bocanegra's positive identification of [Plaintiff's] vehicle as the suspect vehicle to determine that the arrest was supported by probable cause." (ECF No. 4-1 at 17.)

Plaintiff contends that he adequately states his claims against Defendant Griggs because he alleges that Defendant Griggs (1) went to Plaintiff's residence and "allowed" Defendant Bocanegra to knock on Plaintiff's door and arrest him in the curtilage of his home, and (2) "reviewed and signed off on [Defendant] Bocanegra's police report that contained false allegations and material omissions," both of which constitute acquiescence to constitutional deprivations by his subordinate. (ECF No. 7 at 19–20.)

### 1. Legal Standard

Under § 1983, supervisory officials "may not be held liable [in their individual capacities] for the unconstitutional conduct of their subordinates under a theory of respondeat superior." *Iqbal*, 556 U.S. at 676. Instead, the (1) the supervisor must have been "person[ally] involve[d] in the constitutional deprivation," or (2) a "sufficient causal connection [must exist] between the supervisor's wrongful conduct and the constitutional violation." *Hansen v. Black*, 885 F.2d 642, 645–46 (9th Cir. 1989). No supervisory liability exists "in the absence of an underlying constitutional violation" or the "violation of a clearly established right" by subordinates. *Puente v. City of Phoenix*, 123 F.4th 1035, 1064 (9th Cir. 2024).

### 2. Discussion

Plaintiff alleges that Defendant Griggs went to Plaintiff's home address with Defendant Bocanegra and "reviewed and signed off on" Defendant Bocanegra's police report. *Id.* ¶¶ 13, 17. As discussed above, the Court concludes that Plaintiff fails to adequately allege constitutional violations or violations of clearly established rights related

to his arrest, the police report, or his prosecution. Plaintiff thus fails to sufficiently plead any constitutional claims against Defendant Griggs arising from his supervision or approval of Defendant Bocanegra's actions. *See Puente*, 123 F.4th at 1064 (affirming summary judgment for supervisor defendant where plaintiff failed to prove underlying constitutional violations or violations of clearly established rights by subordinates). The Court dismisses all claims brought against Defendant Griggs.

### C. Leave to Amend

Plaintiff requests leave to amend his Complaint to cure any deficiencies identified in this Order. (ECF No. 7 at 20.) Defendant does not oppose Plaintiff's request. (*See* ECF No. 8 at 3.) Federal Rule of Civil Procedure 15 mandates that "[t]he court should freely give leave when justice so requires." Fed. R. Civ. P. 15(a). "This policy is to be applied with extreme liberality." *Eminence Cap., LLC v. Aspeon, Inc.*, 316 F.3d 1048, 1051 (9th Cir. 2003) (per curiam) (quoting *Owens v. Kaiser Found. Health Plan, Inc.*, 244 F.3d 708, 712 (9th Cir. 2001)). The Court grants Plaintiff leave to amend his Complaint to correct the deficiencies addressed in this order.

## V. CONCLUSION

IT IS HEREBY ORDERED that Defendants' Motion to Dismiss (ECF No. 4) is granted. Plaintiff's Complaint is dismissed without prejudice and with leave to amend.

IT IS FURTHER ORDERED that Plaintiff may file a First Amended Complaint no later than thirty (30) days from the filing of this Order. If no First Amended Complaint is filed, the Court will order the Clerk of the Court to close the case.

Dated: June 1, 2026

Hon. William Q. Hayes
United States District Court

3:25-cv-3762-WQH-SBC